**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**Justin T. Weller**, *et al.*,

          *Plaintiffs,*

**v.**                                                   **Case No. 3:24-cv-154**
                                                         **Judge Thomas M. Rose**

**City of Urbana, Ohio**, *et al.*,

          *Defendants.*

---

**ENTRY AND ORDER GRANTING DEFENDANT TAYLOR J. ARMSTRONG'S MOTION TO DISMISS AMENDED COMPLAINT, (DOC. 16).**

---

Before the Court is Defendant Taylor J. Armstrong's Motion to Dismiss Amended Complaint. (Doc. 16.)[1] In this action, Plaintiffs Justin Weller and Tomorrow Holdings LLC d/b/a Urbana Tomorrow LLC (collectively "Plaintiffs") seek an award of damages, attorneys' fees, and costs from the City of Urbana, Ohio, its mayor, its director of administration, a member of the City Council, and Taylor J. Armstrong for an allegedly ongoing conspiracy and series of actions that have allegedly injured Plaintiffs in violation of the United States and Ohio State Constitutions, federal and state statutes, and Ohio common law. In the Amended Complaint,

---

[1] Plaintiffs' Amended Complaint was Docket Entry 15 but was struck for failure to move for leave of court to file an amended complaint. Leave was later granted, and the Amended Complaint is Docket Entry 32. Docket Entry 16 remains the operative motion to dismiss. (*See* Doc. 31, PageID 291-92.)

Plaintiffs have sued Defendant Armstrong in his individual capacity as a citizen and not in his capacity as a state or county employee. (Doc. 32, PageID 297.)

## I.      Background

Plaintiffs' story begins with Plaintiff Justin T. Weller's unsuccessful 2019 mayoral campaign. (Doc. 32, PageID 302.) Weller states that he identifies as bisexual and pansexual and that during the election period, he suffered "direct, illegal opposition" from Defendants. (*Id.*, PageID 300, 302.) With respect to Armstrong specifically, he alleges that during the election campaign, Armstrong, "voiced unfounded allegations of campaign finance improprieties against [Weller] on September 16, 2019, which were summarily rejected by the County Election Board." (*Id.*, PageID 302.) Plaintiffs further allege that during the campaign, Defendants collectively "initiated a smear crusade, unfurling a litany of baseless rumors targeting [Weller]'s policies, integrity, and family." (*Id.*, PageID 303.)

Plaintiffs allege the "Individual Defendants" removed Weller's campaign signs, while not removing campaign signs of some of the Individual Defendants, "despite being located in the same places as [Weller]'s signs, that were illegally removed, damaged, and/or destroyed by Defendant Urbana." (Doc. 32. PageID 309-10.) This was "intended to send a warning to any other non-heterosexual individuals in the City of Urbana, bold enough to attempt to be civically involved in the conservative community and exercising their civil rights." (*Id.*, PageID 310.)

Plaintiffs' claims against Armstrong additionally involve the Urbana Youth Center, a project Weller championed. (*Id.*, PageID 304-05.) Plaintiffs allege that Defendants took "active measures to interfere with and ultimately halt the Urbana Youth Center's access to vital funding in 2023." (*Id.*) Plaintiffs claim that "Individual Defendants effectively blocked the flow of pledged funding to the Urbana Youth Center from the Ohio Department of Mental Health &

Addiction Services in the amount to $750,000.00 annually over a three-year period." (*Id.*, PageID 305.)

Plaintiffs allege that Armstrong blocked the funding by conspiring "with the other bad actors to concoct unprecedented requirements, surreptitiously and without public notice, in excess of those set by the Ohio Department of Mental Health & Addiction Services, meant to act as an insurmountable barrier." (*Id.*)

Finally, Plaintiffs allege that the City of Urbana illegally demolished a property at 405 Gwynne Street that Weller had purchased at public auction, intending to cure nuisance violations and utilize the property for a community building. (*Id.*, PageID 306-07, ¶ 63-67.) Plaintiffs allege that, after the demolition Armstrong met with Weller and threatened him with unspecified consequences should he pursue civil litigation. (*Id.*, PageID 307, ¶ 68-72.)

Plaintiffs assert numerous claims against Armstrong:

- Violation of 42 U.S.C. § 1983 by joining with the mayor and City of Urbana in infringements of Weller's equal protection rights under the United States Constitution (Count I), (Doc. 32, PageID 309);

- Violation of 42 U.S.C. § 1983 by joining with the mayor and City of Urbana in retaliation against Weller for his exercise of First Amendment rights under the United States Constitution (Count III), (*id.* at 313);

- Violation of 42 U.S.C. § 1985 by joining in a conspiracy to interfere with Weller's civil rights (Count V), (*id.* at 318);

- Civil conspiracy (Count VI), (*id.* at 319);

- Tortious interference with a business relationship (Count VII), (*id.* at 320);

- Trespass (Count VIII), (*id.* at 321);

- Promissory estoppel (Count IX), (*id.* at 322);

3

- Intentional infliction of emotional distress (Count X), (*id*. at 323);

- Liability under Ohio Rev. Code § 2307.60, based on violation of Ohio Rev. Code § 2923.32 (Count XI), (*id*. at 324); and

- Negligence (Count XII), (*id*. at 326.)

## II.      Standard

Armstrong moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss each count against him in the Amended Complaint. (Doc. 16.) To survive a motion to dismiss under Rule 12(b)(6), a challenged pleading "must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 66, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A complaint need not contain "detailed factual allegations," but must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.     Analysis

## A.      State law claims

Armstrong asserts Ohio Revised Code §§ 9.86 and 2743.02(F) bar Plaintiffs' state-law claims against him in his individual capacity. Counts VII through XII of the Amended Complaint assert state law claims against all of the defendants. Armstrong argues that, to the extent Plaintiffs assert state-law claims against Armstrong in his individual capacity, this Court lacks subject-matter jurisdiction. (Doc. 16, PageID 192.)

Ohio Revised Code § 9.86 provides that no state "officer or employee shall be liable in any civil action that arises under the law of this state for damages . . . caused in the performance of his duties," unless their conduct is "manifestly outside the scope" of their employment or responsibilities or they acted with "malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 9.86. Even then, any civil action alleging that a state employee's conduct was manifestly outside the scope of their employment or that the employee acted with malicious purpose or in bad faith "shall first be filed against the state in the court of claims" which has "exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under § 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action." Ohio Rev. Code § 2743.02(F).

"Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code § 9.86." *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989). Until that condition is satisfied "there is no claim under Ohio law upon which relief may be granted against state employees in their individual capacities." *Id.* Failure to obtain an immunity determination prior to commencing suit against an Ohio state employee in federal court requires dismissal of the federal action for lack of subject-matter jurisdiction. *McCormick v. Miami Univ.*, 693 F.3d 654, 665 (6th Cir. 2012) (citing *Haynes v. Marshall*, 887 F.2d 700 (6th Cir. 1989)).

Thus, if Armstrong is a state employee, this Court lacks jurisdiction over Plaintiffs' individual-capacity claims under state law unless and until the Ohio Court of Claims first determines that Armstrong is not entitled to immunity pursuant to § 9.86.

Armstrong asserts that his "state employment is a matter of public record." (Doc. 27, PageID 261), (citing *Golf Vill. North, LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021) ("When undertaking its 12(b)(6) analysis, this Court may take judicial notice of 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" (quoting *Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020))).

Among the items appearing in the record of the case is the original Complaint, a verified complaint. While the Amended Complaint describes Armstrong as "14. Defendant Taylor J. Armstrong ("Defendant Taylor"), who is being sued in his individual capacity, is a citizen of the United States and a resident of Champaign County" (doc. 32, PageID 300, ¶ 14), the original complaint, like the Amended Complaint, was a verified complaint, and described Armstrong as "a Legislative Aide to State Representative Tim Barhorst . . . ." (Doc. 1, PageID 4, ¶ 14.)

A verified complaint…has "the same force and effect as an affidavit…." *Talismanic Properties, LLC v. Tipp City, Ohio*, 309 F. Supp. 3d 501, 505 (S.D. Ohio 2017) (citing *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *see also Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)); *Owens v. Traverso*, 271 P.2d 164, 165 (Cal. App. 1954) ("although prior complaints are normally superseded by subsequent ones, and should be disregarded, a pleader cannot cure a defect in a verified complaint by simply…omitting such allegations from subsequently filed pleadings. In such a case the original defect infects the subsequent pleading so as to render it vulnerable to a demurrer.")).

Thus, the Court will grant the current motion with regard to Plaintiffs' state law claims against Armstrong. Because the Court is without jurisdiction over Plaintiffs' state law claims against Armstrong, the Court will not address Armstrong's statute of limitations arguments.

**B.      42 U.S.C. § 1983 and § 1985 claims against Armstrong in his individual capacity**

Armstrong next takes aim at the constitutional claims against him under 42 U.S.C. § 1983 and § 1985. Count I asserts Armstrong is liable under 42 U.S.C. § 1983 for violating the Fourteenth Amendment by discriminating against Weller because he is an "openly bisexual/pansexual man." (Doc. 32, PageID 309.) Count III asserts Armstrong is liable under 42 U.S.C. § 1983 for violating the First and Fourteenth Amendments by punishing and intimidating Weller for his exercise of free speech while campaigning for mayor. (*Id.*, PageID 313-14.) Count V asserts Armstrong is liable under 42 U.S.C. § 1985 for having "conspired with malicious intent to deprive [Weller] and the Plaintiff Businesses of the rights, privileges, and immunities secured to them by the United States Constitution, including their rights to equal protection and due process under the Fourteenth Amendment and the right to freedom of speech under the First Amendment, on the basis of [Weller]'s sexual orientation, his pursuit of political office, his exercise of this First Amendment rights, and/or Defendant Urbana and the Individual Defendants' general disdain for [Weller] as an individual." (*Id.*, PageID 318.)

To maintain an action under § 1983, the plaintiff must allege that the defendant acted under color of state law. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). In § 1983 cases, the term "under color of state law" is equivalent to the "state action" required to implicate the Fourteenth Amendment. *Id.* (quoting *United States v. Price*, 383 U.S. 787, 794, n.7 (1966)). Thus, a private actor is subject to lability under § 1983 only if their alleged conduct qualifies them as a state actor. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014). The same is true for a conspiracy claim under § 1985 based upon violations of the First and Fourteenth Amendments. *Id.* Accordingly, Plaintiffs must allege that Armstrong's actions constitute state action for their § 1983 and § 1985 claims to withstand a motion to dismiss. *See*, *e.g.*, *Lusk v.*

*Alsata Salimatu Lamin*, No. 2:20-cv6064, 2022 U.S. Dist. LEXIS 56341, at *18 (S.D. Ohio Mar.

29, 2022).

In their Amended Complaint, Plaintiffs sue Armstrong in his individual capacity. (Doc.

32, PageID 297.) Plaintiffs do not allege that Armstrong is an officer or employee of the State.

Thus, their Amended Complaint can only be construed as asserting § 1983 and § 1985 claims

against him as a private individual allegedly acting under color of state law. (Doc. 32, PageID

297.) "Private individuals may be considered state actors if they exercise power 'possessed by

virtue of state law' and if they are 'clothed with the authority of state law.'" *Carl*, 763 F.3d at

595 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "The question turns on

whether the private individual's actions can be fairly attributed to the state." *Id*. (quoting *Lugar*,

457 U.S. at 937). There are three tests that guide this determination: "the public function test, the

state-compulsion test, and the nexus test." *Id*., (citing *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th

Cir. 1995)). Plaintiffs have not alleged facts satisfying any of these tests.

First, the public-function test "requires that the private [individual] exercise powers

which are traditionally exclusively reserved to the state." *Carl*, 763 F.3d at 595 (alteration in

original) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). Such powers include

holding elections, exercising eminent domain, and operating a company-owned town. *Chapman*

*v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (en banc). The Sixth Circuit "interpret[s] the

public-function test narrowly, and under it . . . rarely attribute[s] private conduct to the state."

*Nugent v. Spectrum Juv. Just. Servs.*, 72 F.4th 135, 140 (6th Cir. 2023). Indeed, to sufficiently

allege state action under a public function theory, the Sixth Circuit requires a plaintiff to

"advance historical and factual allegations . . . giving rise [to] a reasonable inference that [the

defendant's conduct] is traditionally exclusively in the province of the State." *Marie v. American Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014).

Here, the Amended Complaint does not allege conduct by Armstrong within that narrow band of activities that are "traditionally exclusively referred to the state." Moreover, Plaintiffs' Amended Complaint contains no "historical and factual allegations" that might permit the inference that Armstrong's alleged conduct meets the public-function test.

The Amended Complaint also does not contain allegations capable of satisfying the state compulsion test. That test "requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky*, 960 F.2d at 1335 (citations omitted). The state compulsion test requires more than "mere approval or acquiescence in the initiatives of the private party" by the state. *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 128 (6th Cir. 2009) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). And it requires more than allegations that a private entity merely cooperated with the state. *Marie*, 771 F.3d at 363. Here, Plaintiffs have alleged no facts suggesting the state coerced or even significantly encouraged Armstrong to do anything.

In the mayoral campaign allegations, there are no factual assertions implicating any state encouragement for Armstrong to level campaign finance accusations against Weller. Further, as to the Youth Center allegations, Plaintiffs' assertions are conclusory; they allege only that Armstrong "conspired with the other Individual Defendants to concoct unprecedented requirements" in order to create an "insurmountable barrier" to funding. (Doc. 32, PageID 305.

These "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice[]" to establish state action. *See D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th

Cir. 2014). Plaintiffs do not allege what these requirements were, which state actors encouraged or worked with Armstrong to "concoct" them, how or when they did so, or how these requirements were ultimately implemented.

Regarding the 405 Gwynne St. allegations, Plaintiffs merely allege that Weller requested "a meeting . . . to discuss the discrimination" with Armstrong. (Doc. 32, PageID 307-08.) Plaintiffs further allege that Armstrong acted agitated at the meeting and told Weller that conspiracy claims were "basically impossible to prove," and that Weller would "end up 'six feet under'" if he were to pursue civil rights litigation. (Doc. 32, PageID 307.) While this is threatening, it does not describe the contours of a conspiratorial plan. Moreover, there are no factual allegations detailing which state actors coerced or encouraged this purported conduct, nor how or when they did so. In fact, Plaintiffs expressly allege that Armstrong "stressed that he was not meeting [Plaintiff Weller] in any official capacity . . . ." (Doc. 32, PageID 307.)

Neither does the Amended Complaint plead facts that sufficiently allege state action by Armstrong via the nexus test. Under the nexus test, state action exists "when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky*, 960 F.2d at 1335. The test does not apply to Armstrong because "the plain language of the nexus test requires a 'regulated entity.'" *Bowersock v. City of Lima*, No. 3:07-cv-730, 2008 U.S. Dist. LEXIS 31480, at *8 (N.D. Ohio Apr. 16, 2008). There is no allegation that Armstrong was a "regulated entity" here.

The nexus test requires the state to be "intimately involved in the challenged private conduct." *Bier v. Fleming*, 717 F.2d 308, 312 (6th Cir. 1983). There are no alleged facts suggesting that the state was involved in any of the alleged conduct specific to Armstrong.

Plaintiffs' general allegations that Armstrong "is completely enmeshed in the political and practical operation of Urbana and Urbana Politics" and that his "involvement in local politics started in his teens, continues as a member of the Urbana School Board, and extends with his ongoing relationships with the Individual Defendants, Defendant Urbana, and other officials" (Doc. 32, PageID 307-08), is insufficient. Plaintiffs must allege "a sufficiently close nexus 'between the state and the *challenged action*.'" *Blackwell v. Allen*, No. 22-1300, 2022 U.S. App. LEXIS 35494, at *12 (6th Cir. Dec. 21, 2022) (emphasis in original) (quoting *Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007)).

Generalized allegations about Armstrong's involvement in local politics are not enough to allege a close nexus between any state actor and Armstrong's alleged actions. Plaintiffs allege no facts suggesting that any state actor "supervised or approved" Armstrong's actions or that the State "exerted any control over" those actions. *Blackwell*, 2022 U.S. App. LEXIS 35494, at *12. Plaintiffs fail to allege facts sufficiently demonstrating Armstrong's "will was so overborne as to render its actions those of the state." *Stepp v. Hamilton Cty. Dep't of Educ.* (*In re M.S.*), 756 F. App'x 510, 515 (6th Cir. 2018). Because Plaintiffs have failed to sufficiently allege facts to show Armstrong's conduct could be considered state action, their § 1983 and § 1985 claims against him fail.

Even if Armstrong's alleged conduct could be considered state action, Plaintiffs' § 1983 and § 1985 claims against him would fail. To hold a private party liable under § 1983, a plaintiff must show that the private actor "willfully participate[d] in joint action with state agents." *Weser v. Goodson*, 965 F.3d 507, 516 (6th Cir. 2020) (citation omitted). The plaintiff must "alleg[e] that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Revis v. Meldrum*,

489 F.3d 273, 290 (6th Cir. 2007); *see also Rudd v. City of Norton Shores*, 977 F.3d 503, 517

(6th Cir. 2020). To hold a private party liable under § 1985, "[a] complaint must identify the

alleged conspiracy with more than vague and conclusory allegations." *Rudd*, 977 F.3d at 517

(citation omitted); *see also Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) ("It is well-

settled that conspiracy claims must be pled with some degree of specificity ...." (citation

omitted)); *see also Hines v. Langhenry*, 462 F. App'x 500, 504 (6th Cir. 2011) ("Hines's

allegation that the Tyson Defendants simply acted "in concert with" the City Defendants to

deprive him of his constitutional rights is not sufficient to convert the Tyson Defendants into

state actors.").

Here, only two allegations of misconduct specify Armstrong's involvement. The first

pertains to Urbana's 2019 mayoral election. Plaintiffs allege that, throughout the election,

Armstrong "voiced unfounded allegations of campaign finance improprieties against [Weller]

during the election season, leading" Audra Bean "to file a formal complaint with the Ohio

Elections Commission." (Doc. 32, PageID 303, ¶ 38.)

The second allegation specific to Armstrong relates to funding for the Urbana Youth

Center. Plaintiffs allege that Armstrong "conspired with the other bad actors to concoct

unprecedented requirements[]" for Weller to obtain funding for the Youth Center "surreptitiously

and without public notice, in excess of those set by the Ohio Department of Mental Health &

Addiction Services," and that those requirements were "meant to act as an insurmountable

barrier by making the funding contingent on Defendant Urbana and the Individual Defendant's

approval in furtherance of their discriminatory conspiracy." (*Id.*, PageID 305, ¶ 56.) Armstrong,

as a member of the School Board, allegedly postponed review of [Weller]'s funding request in

spite of numerous efforts by Weller to set a up a meeting to do so. (*Id.*, PageID 305, ¶¶ 57, 74.)

This is the only conduct specific to Armstrong—the "[f]iling [of] an unfounded election complaint" and the "interfer[ence] with Urbana Youth Center and its funding"— that Plaintiffs tie to their constitutional claims. (*Id*. at ¶ 80(c)-(d), 107(c)-(d).)

Neither does Weller sufficiently allege details of a conspiracy, instead asserting that Armstrong admits to the existence of a conspiracy, without ever laying out the details of the conspiracy itself:

> 65. Shortly thereafter, [Weller] acquired the deed for 405 Gwynne, only to be blindsided by being served with a notice to address alleged nuisance violations on the newly acquired property, dated earlier than the date of service.
>
> 66. Despite [Weller]'s efforts to fix the property in the truncated cure period, which [Weller] had communicated to Defendant Urbana, Defendant Urbana served [Weller] with a second notice.
>
> 67. Defendant Urbana proceeded with demolition, damaging property not only owned by Tomorrow, but also that of the contractors hired to fix the alleged violations.
>
> 68. On February 8, 2024, [Weller] requested a meeting and was granted one with Defendant [Armstrong] to discuss the discrimination against [Weller], perpetuated by Defendant Urbana and the Individual Defendants, and more specifically, to extend an olive branch to Defendant [Armstrong].
>
> 69. Prior to the meeting, Defendant [Armstrong] stressed that he was not meeting [Weller] in any official capacity and wished to keep the meeting off the record, despite his deep involvement in state and county politics.
>
> 70. Upon information and belief, Defendant [Armstrong] insisted he and [Weller] turn off their phones for the duration of the meeting.
>
> 71. Defendant [Armstrong] acted agitated and paranoid throughout the meeting, telling [Weller] conspiracy claims were "basically impossible to prove."

> 72. Defendant [Armstrong] ended the meeting, threatening [Weller] that he would be finished in Urbana and end up "six feet under" if [Weller] were to pursue civil rights litigation.
>
> 73. Defendant [Armstrong] is completely enmeshed in the political and practical operation of Urbana and Urbana Politics.

(Doc. 32, PageID 307.)

The remaining allegations against Armstrong generically lump him in with Defendants Robert Bean, Audra Bean, and Kerry Brugger, whom Plaintiffs collectively dub the "Individual Defendants." These collective allegations suffer from two major deficiencies. First, the majority of the collective allegations fail to meet federal pleading standards because they merely state legal conclusions. (*See*, e.g., Doc. 32, PageID 308, ¶ 78 and PageID 311, ¶ 91.)

Second, the collective allegations do not meet the requirements of *Twombley* and *Iqbal* because they do not give Armstrong notice of the misconduct alleged against him. The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original) (citing *Terrance v. Northville Regional Psychiatric Hospital*, 286 F.3d 834 (6th Cir. 2002)); *see also*, e.g., *Bartlett v. Michigan*, No. 17-2274, 2018 U.S. App. LEXIS 12221 at *4-5 (6th Cir. May 9, 2018).

Besides lacking state action, the Amended Complaint fails to state a valid retaliation claim against Armstrong because it does not allege a causal connection between a protected activity and Armstrong's alleged conduct.

To establish a valid First Amendment retaliation claim against Armstrong, Plaintiffs must show (1) they engaged in First Amendment protected activity; (2) that Armstrong undertook "an adverse action" that would deter "a person of ordinary firmness from continuing to engage in

14

that conduct"; and (3) that there is a "causal connection" between the protected activity and Armstrong's adverse action. *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (per curiam)).

Weller alleges that the protected grounds for his retaliation claim consist of "his actions in running for Mayor of the City of Urbana," including the distribution and display of campaign signs. (Doc. 32, PageID 316.) He theorizes that because of his protected political activity, Defendant Armstrong participated in a laundry list of activities in retaliation, including: (1) the filing of an unfounded election complaint in 2019; (2) the creation of "unprecedented requirements" that prevented Plaintiff from obtaining Youth Center funding in 2023; and (3) threatening Weller to not initiate legal action in 2024. *Id.*, PageID 314.

Notably, Plaintiffs fail to allege that they were—or an ordinary person would have been—deterred from engaging in campaign activity. This defect alone is fatal to a First Amendment retaliation claim. Further, Plaintiff does not plead sufficient facts to create a plausible inference that Armstrong's alleged actions were motivated by political animus. *See Williamson v. Slusher*, No. 17-4271, 2018 U.S. App. LEXIS 30693, at *6 (6th Cir. Oct. 29, 2018). Thus, Plaintiffs' factual allegations about Armstrong fail to state a retaliation claim.

Moreover, regarding the mayoral campaign allegations, that conduct cannot predicate Plaintiffs' retaliation claim because the statute of limitations for such a claim is two years. *Oko v. City of Cleveland*, No. 1:21-cv-2222, 2023 WL 4405270, at *6 (N.D. Ohio July 7, 2023) (citing *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989)).

Plaintiffs do not allege that Weller, or any other person, would be dissuaded from running for mayor because of "unfounded allegations of campaign finance improprieties." Indeed, Weller continued his own campaign despite Armstrong's alleged conduct. (Doc. 32, PageID 303.)

15

Moreover, four years elapsed between the protected activity and the Youth Center and 405

Gwynne allegations. "The more time that elapses between the protected activity and the adverse .

. . action, the more the plaintiff must supplement his claim" with factual allegations suggesting a

retaliatory motive. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 524-25 (6th Cir. 2008);

*Lyons v. Tecumseh Local Sch. Dist.*, No. 3:23-cv-74, 2023 U.S. Dist. LEXIS 178069, at *17

(S.D. Ohio Oct. 3, 2023). Here, the conduct in the Youth Center and 405 Gwynne allegations

occurred more than four years after Weller ran for mayor. (Doc. 32, PageID 302.) Without

additional factual allegations such a "wide temporal gap suggests no causal link between the two

events." *Lyons*, 2023 U.S. Dist. LEXIS 178069, at *17 (two-year gap). The Amended Complaint

offers no factual allegations that might mitigate that gap and suggest a causal link. For this

additional reason, Plaintiffs fail to allege a valid First Amendment retaliation claim against

Armstrong.

Lastly, the Amended Complaint fails to adequately allege any facts suggesting any plan

or agreement between Armstrong and the other defendants—much less with the requisite

specificity. The Amended Complaint merely alleges in a conclusory fashion that Armstrong

"conspired with the other Individual Defendants" to harm Plaintiffs. (Doc. 32, PageID 305.)

Vague assertions regarding Armstrong's involvement in local politics are not enough to

substantiate a conspiracy claim. The Amended Complaint lacks factual allegations suggesting the

defendants struck an agreement to violate Plaintiffs' rights. Accordingly, Plaintiffs' § 1983

conspiracy claim fails.

Plaintiffs' § 1985 conspiracy claim fares no better. To make out a civil conspiracy claim

under § 1985, Plaintiffs must show (1) a conspiracy involving two or more persons; (2) for the

purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of

the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). Again, Plaintiffs' Amended Complaint contains no plausible allegations of a conspiratorial agreement between Armstrong and the other defendants. Further, Weller has failed to plausibly allege that he was treated differently from any similarly situated individuals. Accordingly, the Amended Complaint fails to state a valid claim under any theory.

## IV.    Conclusion

Because there has been no determination by the Ohio Court of Claims regarding Armstrong's potential immunity from Plaintiffs' state-law claims, Armstrong's motion will be granted with regard to Plaintiffs' state-law claims against him. Because Plaintiffs do not allege sufficient state law action to implicate a private actor in a constitutional violation, Armstrong's motion will be granted with respect to Plaintiffs' § 1983 and § 1985 claims against him. Plaintiffs' § 1983 and § 1985 claims against Armstrong additionally fail for failure to describe an alleged conspiracy, failure to allege violations sufficient to deter an ordinary person from exercising their constitutional rights, failure to allege that any retaliation was caused by the exercise of constitutional rights, and because they are time-barred. Thus, the Court **GRANTS** Armstrong's Motion to Dismiss (Doc. 16) in its entirety. The claims against this defendant are **DISMISSED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, December 19, 2024.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
