**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **JUSTIN T. WELLER, et al.,** | : | **CASE NO. 3:24-cv-00154** |
| | : | |
| **Plaintiffs,** | : | **Judge Thomas M. Rose** |
| **v.** | : | |
| | : | **DEFENDANTS' MEMORANDUM IN** |
| **CITY OF URBANA, et al.** | : | **OPPOSITION TO PLAINTIFF'S** |
| | : | **MOTION TO EXTEND THE** |
| **Defendants.** | : | **DISCOVERY CUT-OFF AND** |
| | : | **DISPOSITIVE MOTION DEADLINE** |

---

Defendants City of Urbana, Robert W. Bean, Audra M. Bean and Kerry L. Brugger ("Defendants") respectfully oppose Plaintiffs' request to further extend the discovery deadline because they have not sufficiently demonstrated good cause exists for an extension. "To show good cause, a moving party must demonstrate that they diligently attempted to meet the original deadline." *Focus Health Grp., Inc. v. Stamps*, No. 3:19-CV-452-TRM-HBG, 2020 U.S. Dist. LEXIS 244636, at *8 (E.D. Tenn. Dec. 30, 2020) citing *Gatza v. DCC Litig. Facility, Inc.*, 717 F. App'x 519, 521 (6th Cir. 2017) (citing *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003)). Here, Plaintiff has not demonstrated the required diligence.

## I. Background

### A. The 2 ½ years leading to Plaintiffs' Present Motion and Defendants' Responses to Discovery

Plaintiffs filed their initial Complaint on May 23, 2024 (Doc. 1), almost two and one-half years ago. Defendants filed their Answer on July 23, 2025 (Doc. 11). Thereafter, Plaintiffs filed a

First Amended Complaint on July 29, 2024 (Doc. 15).[1] The Urbana Defendants filed their Answer to Plaintiffs' Amended Complaint on August 12, 2024 (Doc. 20).

On May 23, 2025, the Parties filed a Rule 26(f) Discovery Plan (Doc. 40). The discovery plan contemplated an ESI protocol be adopted, but one was never proposed or adopted by the parties. The parties filed their respective Lay Witness Disclosures on December 10, 2025. (Docs. 54, 55) Included in Plaintiffs' Lay Witness Disclosures were Douglas Crabill, Preston Carter and Drake Huffman and Defendants' Lay Witness Disclosure included those individuals as well as Tyler Bumbalough. (Id.)

It was not until July 25, 2025 that Plaintiffs issued interrogatories, requests for admissions and requests for production of documents to each of the Defendants. After receiving a brief two-week extension from Plaintiffs' counsel, Defendants each responded to the discovery requests on September 10, 2025, including the production of over 700 pages of documents. (Doc. 61-1, PgID 566-589.) The following day, on September 11, 2025, Plaintiffs served subpoenas through the undersigned counsel on all Urbana City Council members; Douglas Crabill, Urbana's Community Development Manager; Preston Carter, the Urbana Zoning and Compliance Officer; Council Clerk Roger Steffan; and the City Law Director, Mark Feinstein.[2] Thereafter, on September 12, 2025, Defendants served discovery to each of the Plaintiffs. Defendants responded to the subpoenas on September 30, 2025. (Frick Declaration Exh. 1.) Defendants heard nothing regarding any concerns related to their discovery responses until approximately seven months later on April 16, 2026,

[1] Initially Plaintiffs failed to seek leave but on 9/3/24, they sought leave Instanter (Doc. 22). That motion was denied by notation order without prejudice for failing to comply with S.D. Ohio Loc. Rule 7.3(b) and the motion was refiled on 9/4/24 (Doc. 26). The motion was granted and on 11/6/24 (Doc, 31), Plaintiffs filed their First Amended Complaint to which Defendants filed an Answer on 11/19/24 (Doc. 33). The co-Defendant in this matter filed a Motion to Dismiss (Doc. 16) which was granted on 12/19/24 (Doc. 35) and Plaintiffs filed an appeal (Doc. 36) but did not move to stay the case as to the Urbana Defendants. The appeal was dismissed on 3/4/25. (Doc. 38)

[2] Because the documents sought were documents of the Defendant City obtainable through Rule 34 requests rather than independently held documents, and they were effectively discovery requests, this Court should consider them the equivalent of discovery directed to the City.

when counsel received deficiency letters outlining Plaintiffs' perceived deficiencies in the responses served seven months prior.

Plaintiff Justin Weller's deposition was taken on May 8, 2026 and his business partner on May 15, 2026. On June 8, 2026, Plaintiff served a Notice of Deposition of Corporate Representative of Defendant City of Urbana, Ohio pursuant to Federal Rule 30(b)(6). (Doc. 61-1, PgID 742-750.) Plaintiffs' notice was 17 pages long with 41 separate paragraphs/topics each with multiple sub-topics included therein. (Id.)

On or about July 13, 2026, the parties virtually met and conferred on mutual concerns relating to discovery deficiencies and concerns. Following that conference, the parties agreed to provide additional responses related to the matters raised in the conference. On July 27, 2026, Defendants responded to Plaintiffs' deficiency letters in a comprehensive 26 page letter (Doc. 61-1, PgID 598-624) and addressed additional concerns related to the 30(b)(6) topics and Plaintiffs' discovery responses (Doc, 61-1, PgID 626-671). Plaintiffs submitted only a two-page letter responding to some of the concerns raised by Defendants. (Frick Declaration Exh. 2.) In their respective letters, both parties produced privilege logs.[3] On August 20, 2026, Defendants sent 495 supplemental documents and a supplemental privilege log, following further search by the City's external IT provider in response to specific search terms.[4] (Frick Declaration Exh. 3.) Plaintiffs did not provide any response to the 30(b)(6) objections or address them in any way. Defendants also heard nothing further from Plaintiffs' counsel regarding any other concerns related to their production until the present motion.

---

[3] Although Plaintiffs take issue with Defendants' privilege log not being provided until July 2026, Plaintiffs did not produce one with their original responses either and only did so in July 2026.

[4] Plaintiffs did not provide any specific search terms and as such, Defendants' counsel generated a list and forwarded that list to Plaintiffs' counsel. Defendants' counsel did not hear back with any objection or request for additional terms.

Plaintiffs took the depositions of Defendants Audra Bean on September 22, 2026, Kerry Brugger on September 23, 2026, Robert "Bill" Bean on October 8, 2026, and Kerry Brugger again as the City's 30(b) designee on October 13, 2026. The deposition of the City's 30(b) designee took approximately four hours and at no time during the deposition did Plaintiffs' counsel raise any concerns about Mr. Brugger as the designee or seek to keep the deposition open.

**B. The Alleged Emails Not Produced**

Plaintiffs have failed to demonstrate that the City has not produced requested documents. Plaintiffs' Motion is not accurate and confusing in that they acknowledge that emails were produced by City employees but then argue that the City did not produce them. First, as detailed above, there were multiple productions by the Defendants. Defendants responded to Plaintiffs' initial discovery requests in September 2025 and produced over 700 documents. Next, in response to subpoenas Plaintiffs issued to City employees, including the Community Development Manager, Zoning Compliance Officer and the Clerk of Council and the City Council members—the elected legislative body of the City—additional documents were produced. The responses to the subpoenas were sent to Plaintiffs' counsel on September 30, 2025. (Frick Declaration Exh. 3.) Following the parties' meeting to confer about discovery concerns raised by both parties, the City did a follow-up search for documents through a contracted IT official for specific additional search terms. (Doc. 61-1, PgID 628-629.) Plaintiffs did not provide their own set of search terms or at any time propose an ESI protocol, object to the list provided, or ask to supplement the search terms the City used. On August 28, 2026, Defendants provided Plaintiffs' counsel an additional 495 documents (Bates Nos. 732-1227), (Frick Declaration Exh. 3.) Plaintiffs do not dispute this but inexplicably argue that those documents were not produced by the "City" but rather were produced by the City's "employees." Notwithstanding, the documents were produced and Plaintiffs had the

documents prior to the depositions of the Defendants and at no time indicated, even in their current motion filed one day prior to the discovery deadline, that they did not have sufficient time to review these documents.

In addition, Plaintiffs contend that there were emails produced by Plaintiffs that were not included in the City's production. In an exhibit to the Declaration to this Court by Plaintiffs' counsel (Doc. 61-1, PgID 709-730), Plaintiffs claim that they produced 87 pages of emails not produced by the City. However, Defendants' counsel has reviewed Plaintiffs' schedule G and the specific emails purportedly produced by Plaintiffs and not Defendants, and there is simply no validity to this claim. The undersigned personally reviewed each and every document on Plaintiffs' Schedule G that they claim was produced by Plaintiffs and not the City. There were 87 pages identified. Included in those pages are only 18 emails that include emails such as an automatic out of office reply from Doug Crabill dated March 25, 2024; an email from Doug Crabill regarding a Steering Committee Meeting related to the North Main Street Corridor Plan, multiple emails regarding the airport, the City's DORA or emails that were in fact produced. (Frick Declaration Exh. 4.)

While arguably the emails related to the airport may involve Plaintiff Justin Weller, nothing in the Amended Complaint or any allegations have ever raised any issues related to the airport and any business Mr. Weller has with the airport. Moreover, the emails related to the airport involve a business of Mr. Weller's called Tomorrow Horizons and a lease it had of a hangar at the airport. (Frick Declaration Exh. 4, Weller621.) Plaintiffs' discovery directed to Defendants defined "Plaintiffs' Businesses" to only include Tomorrow Holdings, LLC and the Urbana Youth Center, LLC—not Tomorrow Horizons. (Frick Declaration Exh. 5, pg. 2.) These topics and documents are not responsive to Request for Production Nos. 5, 11, 12, 13, 15 and 17 as claimed by Plaintiffs.

Additionally, the remaining documents Plaintiffs claim were not produced are not what Plaintiffs' Schedule G claims that they are and are not emails to or from anyone at the City. (Frick Declaration Exh. 4.) Attached hereto are all 87 Bates Stamped pages corresponding to the documents identified in Plaintiffs' Exhibit G as "non-produced City emails" whose alleged "Source" was "Plaintiffs' production." (Doc. 61-1, PgID 709-730.) However, this Court can easily review the documents Plaintiffs claim (but did not attach) were unproduced emails and determine that they are not what the Exhibit states they are. Additionally, some of the documents Plaintiffs claim were not produced were in fact produced by Defendants. (Frick Declaration Exhs. 6, 7 and 8; See Doc. 61-1, PgId 725, 724, 717.) It is unclear what Plaintiffs base their Exhibit G on, but it is not on the documents that they claim.

### C. <u>The City's 30(b) Representative Was Competent and Prepared for the Topics Actually Noticed.</u>

The City's 30(b) Representative, Kerry Brugger, was the City Administrator for over thirteen years before retiring in 2025. He was knowledgeable and informed as to the relevant 41 topics demanded by Plaintiffs. Plaintiffs' Motion points to only five to seven alleged issues for which they claim Mr. Brugger was unprepared. (Doc. 61, PgID 549, 555.) However, some of the issues were not even topics identified in the 30(b)(6) Notice or his responses are mischaracterized by Plaintiffs.

First, Plaintiffs claim that Mr. Brugger could not identify who at the City, other than himself and the other individual Defendants, had provided information for the City's Interrogatory answers. (Doc. 61, PageID 549.) However, Mr. Brugger specifically testified that he provided responses and that Mayor Bean and Audra Bean did as well, but that he was not aware of anyone else having done so—which is different than saying he did not know who else did. (Brugger Dep. p. 12.) As to the City's responses he testified that "[g]enerally I knew the answers to the questions"

(Id. p.14.) other than he may have had to research some dates or addresses. (Id.) As such, to claim he was unaware of who had provided responses to the interrogatories, simply is not accurate.

Plaintiffs further allege that Mr. Brugger could not identify who drafted the City's response to the City's account of its communications regarding state officials included in the Urbana Youth Center funding. (Doc. 61, PageID 549.) However, Mr. Brugger actually testified and when asked about responses to the interrogatories to the City, he stated: "I prepared it." (Id. p. 15.) Plaintiffs' counsel pressed Mr. Brugger about the actual words used and stated that while he could not specifically say who "drafted" the actual words or phrases, he stated, "I recall having that conversation about it." (Id. p, 17.) That is not the same as saying he was unable to respond.

Plaintiffs further complain that Mr. Brugger could not respond to questions about economic development incentives for a project the City recently annexed. (Doc. 61, PgID 549.) However, that was not a topic identified in the 30(b)(6) notice. (Doc. 61-1, PgID 742-758.) A review of the notice reveals that there was no topic listed requesting that he be able to speak to economic incentives to recent projects. It does not even contain the words "economic incentives." Topic 7 of the Notice references only "[t]he City's knowledge of comparators ODMHAS applications and approvals for other UYC-equivalent entities." (Doc. 61-1, PgID 747.) A proposed data center development (Brugger Depo p. 30) is hardly an "Urbana Youth Center" equivalent entity and has nothing to do with any Ohio Department of Mental Health & Addiction Services (ODMHAS) funding. Thus, it was beyond the scope of the 30(b) Notice.

Plaintiffs further complain that as the City's representative Mr. Brugger did not specifically know if Mr. Bean was invited to a meeting at the Urbana Youth Center. (Doc. 61, PgID 549.) However, it is not entirely clear how this would specifically be information of the City instead of information specific as to Mr. Bean. Admittedly, Mr. Brugger could not state for sure if Mr. Bean

had been invited, but the 30(b)(6) Notice requested information on the "identity of the persons present at or participating in the meeting" and "Kerry Brugger's email communications with Armstrong before and after the meeting," not specifically who all was invited to the meeting. (Doc. 61-1, PgID 747-748.) Additionally, there is no reference in the 30(b)(6) Notice as to information on the "stakeholder meeting." (Doc. 61-1, PgID 742-758.) The Notice did not even include the word "stakeholder."

With respect to how the special assessment was handled as to 405 Gwynne Street, again, it is important to note what topics were identified in the 30(b) notice as to that property. Specifically, the notice provided the following:

> **Topic 14: 405 Gwynne Street - Demolition**
> The complete timeline and decision-making process for proceeding with demolition, including the identity of all officials who participated in or approved that decision; the identity of all City employees present on site during the demolition; the demolition invoice and the amount charged to or paid by the City; any damage caused to contractors or third-party property during the demolition; the City's admission in Response to Request for Admission No. 7 that it was aware of alleged nuisance violations prior to Plaintiff's purchase.
>
> **Topic 15: 405 Gwynne Street - Post-Demolition**
> The subsequent disposition of the 405 Gwynne parcel following demolition; handling of $15,000.00 payment; any City valuation; and any comparison of the City's treatment of similarly situated nuisance properties owned by other parties during the same period.
>
> **Topic 36: Selective Enforcement—Comparator Properties and Owners**
> *** the criteria applied to determine whether to assess demolition costs to a property owner versus absorbing them as a City expense, and whether that criteria was applied consistently.

(Doc. 61-1, PgID 748-749, 754.) Mr. Brugger was not specifically asked about the above topics or criteria, rather he was asked whether the intention was to have the cost of demolition assessed as a lien against the real estate to which Mr. Brugger stated that "the way it usually works, the costs we incur on a property, it's assessed to the property. We first try to invoice the property owner. If

they don't pay for it, it goes to the property." (Brugger Dep. p. 138.) The questions posed by Plaintiffs' counsel did not include inquiries as to specifics regarding the demolition, post-demolition disposition, or comparator properties and owners as was contemplated in the notice. Finally, as to whether the City would have knowledge of who sold the property following the demolition or who owned the property after the demolition, that is not information that would necessarily be known or reasonably available to the City because it was Mr. Weller's property. The City did not own it, sell it, or transfer it, and was not involved in those private transactions.

Plaintiffs also argue that Mr. Brugger did not know an answer regarding the police department's policies. (Doc. 61, PgID 549.) However, again, the Notice for the 30(b) deposition did not include anything related to the police department or their policies. In fact, the notice does not even contain the word "police." Thus, it was again not a topic he was requested to be prepared to answer and was beyond the scope of the 30(b)(6) Notice. (Doc. 61-1, PgID 742-758.)

Plaintiffs further take issue with Mr. Brugger not knowing specifically what the term "litigation hold" meant. However, not being familiar with that legal term does not mean that a litigation hold was not implemented. In fact, in the portion of the deposition cited by Plaintiffs, Mr. Brugger identified in detail the steps taken by the City to preserve records related to the Plaintiffs. (Brugger Dep. pp. 146-151.) Mr. Brugger testified that following receipt of the pre-suit litigation hold letter, the law director met with him and other City employees that had regular business with Mr. Weller regarding the preservation of records. Individuals were asked to review emails and all electronic files and folders as well as paper files and to segregate them into a specific file. (Dep. p. 148-150) Individuals searched for terms such as names, properties, and specific dates to capture everything that they could and there was no date limit on what was searched. (Id.) He

admittedly could not speak to the attorney-client privileged communications that the City Law Director had with the Council Members, but assumed that they searched their records as well. (Id.)

While a party has the responsibility under Rule 30(b)(6) to prepare its designee "to the extent matters are reasonably available, whether from documents, past employees, or other sources" the rule does not specifically require that the designee be the one to interview employees or locate the information. Specifically, it is the company that is required "to make a good faith effort to find out the relevant facts possessed by the corporation." *Clear Cast Grp., Inc. v. Ritrama, Inc.*, No. 1:09CV0169, 2011 U.S. Dist. LEXIS 167897, 2011 WL 13334451, at *3 (N.D. Ohio Sept. 15, 2011) (internal quotation and citations omitted). Plaintiffs' counsel did not ask Mr. Brugger what the City did to prepare him for his deposition. Furthermore, Mr. Brugger testified that he reviewed "reports turned in as records for the case" or in other words, documents produced in the case in discovery. (Brugger Dep. p. 8.) He also testified that he reviewed all the "exhibits" marked in depositions, City ordinances, the City Charter, public documents, and anything else he believed to be relevant. (Brugger Dep. p. 96.) Plaintiffs' counsel did not follow up as to specifically what documents he was referencing or even ask if Mr. Brugger had reviewed the Notice of Deposition to determine what he believed was "relevant." It is wholly inaccurate for Plaintiffs to claim that he had no corporate knowledge beyond his own or that he reviewed no documents beyond those he had personally produced a year earlier. (Doc. 61, PgID 555.)

Additionally, to the extent Mr. Brugger did not have the exact answers to every question, a "30(b)(6) witness is not expected to perform with absolute perfection." *Pogue v. Nw. Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS, 2017 U.S. Dist. LEXIS 110990, at *27 (W.D. Ky. July 17, 2017) citing *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012) (citation omitted). "[T]he inability of a designee to answer every question on a particular topic does not

necessarily mean that the corporation has failed to comply with its obligations under the Rule." *Id.* citing *Janko Enters. v. Long John Silver's Inc.*, 2014 U.S. Dist. LEXIS 185334 at *14 (citing *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 691(Fl. S. Dist. Crt.). As noted previously, Plaintiffs have only pointed to five to seven issues they claim Mr. Brugger could not speak to (Doc. 61, PgId 555) and mischaracterize his testimony given as to 4 of the 5 topics. In evaluating whether a 30(b)(6) witness was adequately prepared, courts should compare the testimony elicited in the deposition to the topics noticed under Rule 30(b)(6) in order to determine the adequacy of the witness' preparation. See generally, *Oro BRC4, LLC v. Silvertree Apartments*, No. 2:19-cv-4907, 2021 U.S. Dist. LEXIS 108678, at *11 (S.D. Ohio June 10, 2021) (citation omitted). A cursory review of the issues raised by Plaintiffs reveals that the City's 30(b)(6) witness was sufficiently prepared and able to respond.

## II. Plaintiffs' Counsel Has Not Shown Good Cause and Did Not Exhaust Efforts Required By the Local Rules

Not only have Plaintiffs not demonstrated good cause, but they have also not demonstrated diligence in seeking a modification to the scheduling order. Plaintiffs' seven-month delay in addressing any alleged deficiency in Defendants' September 2025 discovery responses; Plaintiffs failure to follow up after Defendants responded to the alleged deficiencies to indicate they still had concerns; Plaintiffs' additional two-month delay after everything was produced; and Plaintiffs' request for an extension one day before the discovery deadline indicates a lack of diligence rather than an inability to meet the schedule despite diligent efforts.

Federal Rule of Civil Procedure 16(b)(4) frames the backdrop for the Court's review of Plaintiffs' request. It states that a "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16. Courts consider five factors when evaluating such a request: "(1) when the moving party learned of the issue that is the subject of discovery; (2) how the

discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to . . . discovery requests." *Hall v. Navarre*, 118 F.4th 749, 755 (6th Cir. 2024) citing *Bentkowski v. Scene Mag.*, 637 F.3d 689, 696 (6th Cir. 2011) (citation omitted).

Plaintiffs had Defendants initial discovery responses 13 months prior to their motion and supplemental responses 2 months prior to their motion. They had more than enough time to address the issues with Defendants, and the Court, if necessary, rather than wait until the day before the discovery deadline. The discovery period was no less than 17 months following the date of the 26(f) Conference and Report filed on May 23, 2025. That amount of time was more than sufficient for Plaintiffs to seek discovery and follow up on any issues they believed existed. In fact, the individuals identified as potential new witnesses they seek to depose—Mr. Crabill, Mr. Huffman, Mr. Carter and Mr. Bumbalough—were all identified as lay witnesses in the parties' Lay Witness Disclosures filed on December 10, 2025 and Plaintiffs have provided no explanation as to why they could not or did not depose them within the 17-month discovery period.

Plaintiffs were dilatory in their efforts and should not be granted further time. "Dilatory" is defined as "tending or intended to cause delay" or "characterized by procrastination." "Dilatory." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/dilatory. Accessed 15 Nov. 2026. Courts have previously found that waiting ten months after initial disclosures were completed was an "inexplicably lengthy delay." *Dunlap v. Sevier Cty.*, No. 20-6216, 2021 U.S. App. LEXIS 21961, at *15 (6th Cir. July 23, 2021). Additionally, in *Dowling v. Cleveland Clinic Foundation*, 593 F.3d 472, 480 (6th Cir. 2010), the court held that plaintiffs were dilatory in seeking discovery where they "did not conduct discovery for substantial periods of time."

This case has been pending for 2 ½ years. Plaintiffs did not serve discovery on the Defendants until over a year after the case was filed. Defendants promptly responded to the discovery, with only a short two-week agreed-upon extension. Plaintiffs then inexplicably and without explanation waited seven months before addressing any purported deficiencies in the discovery. Notwithstanding, Defendants worked with Plaintiffs and agreed to address their concerns. Following a conference amongst counsel to address the claimed deficiencies, Defendants responded within the agreed upon two-week time frame to the specific deficiencies and expanded their search for emails. By August 28, 2026, additional emails were produced. Following the response to the concerns raised by Plaintiffs and the supplemental production of additional documents, Defendants heard nothing further from Plaintiffs alleging any additional issues until Monday, October 26, 2026 when Plaintiffs' counsel reached out to Defendants' counsel about filing their motion to extend discovery. Plaintiffs have done nothing to justify their delay in raising concerns about the discovery responses for seven months and just four months before the discovery deadline set at that time. (See Doc. 41.)

Furthermore, Plaintiffs claim that the City did not describe its search (Doc. 61, PgID 552), however on July 27, 2026, Defendants described the search efforts taken previously and expanded the search requests. (Doc. 61-1, PgID 628-629.) Plaintiffs never indicated any issue with those subsequent search terms or procedures despite having the information three months prior to filing their motion. Plaintiffs' counsel took the depositions of the three individual Defendants and the corporate representative, in-person, following the City's production and never once identified any further concerns with it. Moreover, neither at the deposition of the City's representative, nor following its completion did Plaintiffs raise any issues with the preparation of the witness or seek to keep the deposition open. Plaintiffs have failed to explain why in a discovery period of over 17

months, they waited until the last four[5] months to address any discovery issues. The discovery deadline was even extended an additional 2 ½ months to October 30 2026, but Plaintiffs now seek even more time without sufficient justification. See *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (requiring a "justification for the delay").

In addition, this Court's standing order notes that "counsel have an obligation to exhaust among themselves all extrajudicial means for resolving discovery disputes." S.D. Ohio General Order 12-01 (Discovery and Motion Practice- Planning.) Plaintiffs have not done so as they never followed up after July 13, 2026 regarding any claimed additional concerns or deficiencies. Contrary to this Court's standing order, rather than discussing it with Defendants' counsel or even seeking a discovery conference with the Court, they filed the herein motion at the eleventh hour without sufficient justification.

## III. The City's Production is Sufficient and Not Incomplete

The City did not simply undertake a cursory review of potentially responsive documents. Prior to the commencement of this litigation, the City had already segregated and identified documents relating to Plaintiffs and initially produced more than 700 pages of documents. Moreover, contrary to Plaintiffs' representations, the City subsequently produced an additional 495 pages following an expanded keyword search conducted by an outside, contracted IT professional. (Frick Declaration, Ex. 3.)

Plaintiffs rely on *TERA II, LLC v. Rice Drilling D, LLC*, No. 2:19-cv-2221, 2022 U.S. Dist. LEXIS 68892, 2022 WL 1114943, for the proposition that the City's initial self-collection efforts were insufficient. However, Plaintiffs' reliance on that decision is misplaced. In *TERA II*, the court expressly recognized that "manual collection of information, including 'by the document authors

[5] The original discovery deadline was August 14, 2026. The parties agreed to extend the deadline to October 30, 2026 by joint motion.

or custodians themselves,' 'may be appropriate in some situations.'" *TERA II, LLC v. Rice Drilling D, LLC*, No. 2:19-cv-2221, 2022 U.S. Dist. LEXIS 68892, at *14 (S.D. Ohio Apr. 14, 2022) (quoting *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, 167 (2018)). Rather, the court explained that the adequacy of such collection efforts, including questions of accuracy and completeness, may depend upon the degree of oversight provided by legal counsel or forensic experts.

Here, the record establishes that the City's collection efforts included both legal oversight and subsequent technical review. Specifically, testimony established that the City's Law Director provided oversight of the initial collection and production. (Brugger Dep. at 145.) The City then supplemented its production following an additional search conducted by an outside IT professional. Indeed, correspondence from Defendants' counsel to Plaintiffs' counsel expressly confirmed: "[a]ttached is our supplemental production as to RFDs and the subpoenas as we previously discussed and a corresponding privilege log based on specific search terms." (Frick Declaration, Ex. 3.) Thus, unlike a situation involving an unsupervised or purely informal self-collection, the City's efforts involved oversight by legal counsel followed by an additional, targeted search performed by an outside IT professional. Furthermore, a significant distinction exists between this case and *TERA II*: in that case, the moving party had proposed six search terms for the opposing party's use. *Id.* at *12. That circumstance is not present here and further distinguishes the discovery efforts at issue.

Plaintiffs also contend that Exhibits G and H to their Motion demonstrate documents that the City allegedly failed to produce. Neither exhibit supports that contention. Exhibit H consists of documents that the City actually produced through its individual employees. Accordingly, it is

unclear how documents already produced by the City could establish deficiencies in its production. Exhibit G is similarly unpersuasive and, notwithstanding the representations in Plaintiffs' counsel's declaration, contains significant inaccuracies. First, Exhibit G acknowledges that the majority of the referenced documents were provided to Plaintiffs by Defendants' counsel. As to the remaining documents, Exhibit G purports to identify emails that were not produced by the City but were instead included in Plaintiffs' own production. However, even a cursory review of the documents identified in Exhibit G as allegedly unproduced reveals that they do not accurately correspond to the descriptions or representations made in the exhibit. (Frick Declaration, Ex. 4.)

Finally, the record reflects that Defendants have provided testimony concerning the City's document collection efforts, supplemental discovery responses, and an identification of the search terms utilized in the supplemental search. (Doc. 61-1, PgID 628–629.) Taken together, this evidence demonstrates that the City undertook reasonable and meaningful efforts to identify, collect, and produce responsive documents, including additional efforts to address any potential gaps in its initial production. Plaintiffs have offered no credible evidence establishing that the City's production is deficient or incomplete. Their unsupported assertions and inaccurate characterization of the produced documents do not establish a basis for finding otherwise.

## IV. <u>Defendants will be prejudiced by another extension to the discovery deadline</u>

As previously noted, this case has been pending for approximately two and one-half years. The discovery deadlines and case schedule were established by the parties themselves during their Rule 26(f) conference and memorialized in their joint report. Defendants are prepared to timely file their dispositive motion in accordance with this Court's Scheduling Order, thereby allowing the Court a meaningful opportunity to consider and resolve the motion before trial. Extending the current deadlines, however, risks substantially compromising that opportunity. As reflected in this

Court's Preliminary Pretrial Order, an extension would result in dispositive motions not being fully briefed until the end of March, leaving the Court only approximately three months before trial to consider and rule upon those motions. (Doc. 41, PgID 405.) Plaintiffs have had ample opportunity to conduct the discovery necessary to prepare their case and to address any discovery-related concerns they now raise. Moreover, the additional depositions Plaintiffs seek are not of previously unknown individuals. Three of the four proposed deponents were specifically identified by Plaintiffs in their own Lay Witness Disclosures, and the remaining individual was identified in Defendants' Lay Witness Disclosures nearly a year ago. Plaintiffs therefore cannot credibly suggest that the need to depose these individuals has only recently become apparent or that they lacked an adequate opportunity to pursue such discovery within the existing schedule.

Throughout discovery, Defendants have cooperated with Plaintiffs and made reasonable efforts to address their concerns. Defendants have provided responses to Plaintiffs' discovery requests, and there is no basis to characterize those responses as evasive or as reflecting an intentional failure to produce responsive information. Although Plaintiffs may disagree with the substance of certain responses, that disagreement does not establish that Defendants failed to respond or that additional discovery is warranted. At this stage of the proceedings, extending discovery to accommodate Plaintiffs' additional deposition requests would impose further and unnecessary expense and burden on Defendants, while potentially depriving Defendants of the opportunity to have their dispositive motion considered sufficiently in advance of trial. Given the substantial time already afforded for discovery, Plaintiffs' prior knowledge of the individuals they now seek to depose, and Defendants' continued compliance with the Court's Scheduling Order, there is no justification for further extending the discovery deadlines. The resulting delay, expense,

and potential prejudice to Defendants weigh strongly against Plaintiffs' request. Plaintiffs have not demonstrated good cause for their request.

## V. Conclusion

Based upon all the foregoing, including the referenced and attached Exhibits and Declaration, Defendants respectfully request this Court deny Plaintiffs' motion to extend the discovery cut-off and proceed under the current Preliminary Pretrial Order.

Respectfully submitted,

SURDYK, DOWD & TURNER CO., LPA

/s/ *Dawn M. Frick*

Dawn M. Frick (0069068)
Jeffrey C. Turner (0063154)
Justin R. Marks (0103811)
8163 Old Yankee Street, Ste. C
Dayton, Ohio 45458
(937) 222-2333 (office) | (937) 222-1970 (fax)
dfrick@sdtlawyers.com
jturner@sdtlawyers.com
jmarks@sdtlawyers.com
*Attorneys for Defendants City of Urbana, Robert W. Bean, Audra M. Bean, and Kerry L. Brugger*

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, a copy of which will automatically be forwarded to the parties or their counsel of record.

/s/ *Dawn M. Frick*

Dawn M. Frick (0069068)