**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| JUSTIN T. WELLER, *et al.*<br><br>*Plaintiffs*,<br><br>vs.<br><br>CITY OF URBANA, OHIO, *et al.*<br><br>*Defendants*. | Case No. 3:24CV154<br><br>Judge Thomas M. Rose<br>Magistrate Judge Caroline H. Gentry |

**PLAINTIFF JUSTIN T. WELLER'S AND PLAINTIFF TOMORROW HOLDINGS LLC'S FIRST SET OF REQUESTS FOR ADMISSIONS, INTERROGATORIES, AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CITY OF URBANA, OHIO**

Pursuant to Rules 26, 33, and 36 of the Federal Rules of Civil Procedure, Plaintiffs Justin T. Weller and Tomorrow Holdings LLC, hereby propound upon Defendant, City of Urbana, Ohio, their First Set of Requests for Admissions, Interrogatories, and Production of Documents to be answered fully and under oath within 30 days of service of same, unless an objection is made, in which event, the objection must be set forth with specificity and signed by the attorney making said objection(s).

## INSTRUCTIONS

Prior to answering these discovery requests, Defendant City of Urbana is requested to search all records, documents, papers, and electronic information storage systems and to review all information in their possession or control or within the possession or control of their attorneys. These interrogatories are continuing in nature and that if, after serving their answers Defendant discovers additional matter that was not included in their original answers, Defendant is under a continuing duty to promptly supplement their original answers.

DECLARATION EXH. 5

## DEFINITIONS

As used herein:

1. "Amended Complaint" is meant to refer to the Amended Complaint that was filed by Plaintiffs in the U.S. District Court for the Southern District of Ohio, Western Division (Case No. 3:24CV154) to commence this action.

2. "You" and "Your" shall be construed to mean Defendant City of Urbana and its attorneys, agents, employees, and any agents, employees, and representatives of their attorneys.

3. "Plaintiff Justin" shall be construed to mean Plaintiff Justin T. Weller, and/or his agents, attorneys, guardians, and representatives, as well as any other person acting or purporting to act on his behalf or under their direction.

4. "Plaintiff Businesses" shall be construed to mean Plaintiff Tomorrow Holdings LLC and Urbana Youth Center LLC, and/or their agents, attorneys, guardians, and representatives, as well as any other person acting or purporting to act on their behalf of under their direction.

5. "Defendant Urbana" shall be construed to mean Defendant City of Urbana, Ohio, the political subdivision in the State of Ohio and its attorneys, agents, employees, officials, and representatives, and any agents, employees, officials s and representatives of its attorneys.

6. "Defendant Bean" shall be construed to mean Defendant Robert W. Bean and his attorneys, agents, employees, and representatives, and any agents, employees and representatives of his attorneys.

7. "Defendant Audra" shall be construed to mean Defendant Audra M. Bean and her attorneys, agents, employees, and representatives, and any agents, employees and representatives of her attorneys.

8. "Defendant Kerry" shall be construed to mean Defendant Kerry L. Brugger and his attorneys, agents, employees and representatives, and any agents, employees and representatives of his attorneys.

9. "405 Gwynne Street" shall be construed to refer to the property located at 405 Gwynne Street, Urbana, Ohio 43076.

10. "Political Signs" shall be construed to refer to the campaign signs supporting Plaintiff Justin's candidacy for Mayor of the City of Urbana.

11. The singular shall always include the plural, and the present tense shall always include the past tense.

12. "And" and "or" shall be construed both disjunctively and conjunctively in order to bring within the scope of these discovery requests all responses which might otherwise be construed to be outside their scope.

13. "Communication" shall mean and include all oral and written conversations, discussions, correspondence, letters, electronic mail (including metadata), text message, facsimile transmissions, telecommunications, telexes, teletypes, telegrams, telegraphs, social media communications, and any other method of communicating information or thoughts and ideas in any form, oral, written, or otherwise.

14. "Identify," when referring to a person, means to state the full name and present or last known address of that person and the person's telephone number and email address.

15. "Identify", when referring to an entity other than a natural person, means to state the entity's full name and the address of its principal place of business.

16. "Information" means *any* form or medium of communication (written, verbal, digital, or otherwise) that contains words, numbers, facts, thoughts, or ideas.

17. "Knowledge" means an awareness, directly or indirectly, of facts.

18. "Relating to" and "relate to" as used herein means referring to, regarding, pertaining to, comprising, indicating, supporting, negating, constituting evidence of (in whole or in part), or having any relationship with whatsoever.

19. "Document" or "documents" shall mean and includes the following: drafts, copies, photostats, and reproductions of such; any and all paper, records, data, correspondence, memoranda, notes, letters, telegrams, telegraphs, telex communications, teletype communications, facsimile communications, electronic communications, e-mail communications, electronically stored information, summaries of records of telephone conversations and personal conversations, diary entries, calendars, personal planners, drawings, sketches, graphs, charts, interoffice and intercompany communications, marginal comments or other notations appearing on any tangible material, and any and all other written, printed, typed, handwritten, recorded, transcribed, punched, bound, taped, or filmed items, and any information stored in computers or other computer data storage devices (such as computer discs and flash drives) or processing equipment translated or translatable into usable form.

"Document" or "documents" are also to be considered as including all attachments, enclosures and other documents that relate to or refer to such designated document(s). The enumeration of various specific items as included within the definition of the term "document" or "documents" shall not be taken to limit the generality of those terms, and the requests herein are intended to obtain all documents in the broadest and most comprehensive sense and meaning of the term.

"Document" or "documents" also includes data of any type, in any format, including data resident at any physical location on any type of electronic media, regardless of the "logical" characteristics or properties assigned to the data by any operating system or application, including any data from which intelligence can be perceived with or without the use of any detection devices, including without limitation forensic and non-forensic software programs and any computer

operating systems, including programs and operating systems other than those presently used or available to Plaintiff to interpret data on electronic media. Specifically, "document" or "documents" includes data resident in the following areas of any electronic media:

a. File and RAM slack areas;
b. Unallocated areas of electronic media;
c. Swap file areas;
d. Allocated areas of electronic media; and
e. Metadata, which includes documents that identify all the logical and physical characteristics of all data produced in response to this request, including but not limited to:
   (1) File modification, access, and created data and times;
   (2) Sector location at which the data exists; and
   (3) Identification of the electronic media on which the data is resident.

With respect to each document herein requested to be produced, which has not been so produced:

1. On the ground of any alleged privilege or immunity, identify each such document by specifying its date, author(s), recipient(s), subject matter, all persons to whom such document has been provided, and the present location and custodian of the document; and explain the basis of your claim of alleged privilege or immunity.

2. Because it has been lost or destroyed, identify each such document by specifying its date, author(s), recipient(s), subject matter, all persons to whom such document has been provided, and set forth the circumstances that caused it to be lost or destroyed.

3. Because the request seeks irrelevant information, is overly broad, or is ambiguous, please provide all documents contemplated by the request that are relevant and proper.

These discovery requests are deemed to be continuing. Defendant is reminded of the obligation, pursuant to Fed.R.Civ.P. 26(e), to supplement its responses to these discovery requests.

## REQUESTS FOR ADMISSION

**Request No. 1:** Admit that Defendant Urbana is a political subdivision capable of being sued under Ohio Law and Federal Law.

**ANSWER:**

**Request No. 2:** Admit that Defendant Urbana, through its officials, threatened Plaintiff Justin's political supporters with punitive fines during the 2019 mayoral election.

**ANSWER:**

**Request No. 3:** Admit that Defendant Urbana, through its officials, collaborated with other Defendants named in the Amended Complaint regarding Plaintiff Businesses' access to funding from the Ohio Department of Mental Health & Addiction Services and / or Mental Health Drug and Alcohol Services Board of Logan and Champaign Counties.

**ANSWER:**

**Request No. 4:** Admit that Defendant Urbana, through its officials, was involved in the decision to impose additional requirements on the Plaintiff Businesses' funding application, beyond those set by the Ohio Department of Mental Health & Addiction Services and / or Mental Health Drug and Alcohol Services Board of Logan and Champaign Counties.

**ANSWER:**

**Request No. 5:** Admit that Defendant Urbana, through its officials, was involved in the removal, damage, and/or destruction of Political Signs supporting Plaintiff Justin's candidacy for Mayor of the City of Urbana.

**ANSWER:**

**Request No. 6:** Admit that Defendant Urbana, through its officials, participated in discussions or meeting where the decision was made to deny Plaintiff Justin's conditional use request for multi-family housing at 207 W. Market Street.

**ANSWER:**

**Request No. 7:** Admit that Defendant Urbana was aware of alleged nuisance violations at 405 Gwynne Street prior to Plaintiff Justin's purchase of the premises and participated in the decision to proceed with demolition of the property.

**ANSWER:**

**Request No. 8:** Admit that Defendant Urbana, through its officials, was involved in the dissemination of rumors regarding Plaintiff Justin's personal and professional activities.

**ANSWER:**

**Request No. 9:** Admit that Defendant Urbana's actions, through its officials, were motivated in part, by Plaintiff Justin's sexual orientation.

**ANSWER:**

**Request No. 10:** Admit that Defendant Urbana, through its officials, had the authority to influence or make decisions regarding municipal policies affecting Plaintiff Justin and Plaintiff Businesses.

**ANSWER:**

**Request No. 11:** Admit that Defendant Urbana's actions, through its officials, were motivated by opposition to or disdain for, Plaintiff Justin's political beliefs.

**ANSWER:**

**Request No. 12:** Admit that Defendant Urbana's actions, through its officials, were a direct and proximate cause of harm to Plaintiff Justin and Plaintiff Businesses.

**ANSWER:**

**Request No. 13:** Admit that Defendant Urbana was aware of the impermissible discriminatory intent behind the actions taken against Plaintiff Justin and Plaintiff Businesses by its officials.

**ANSWER:**

**Request No. 14:** Admit that Defendant Urbana, through its officials, collaborated with the other Defendants named in the Amended Complaint in retaliation against Plaintiff Justin for exercising his First Amendment rights.

**ANSWER:**

**Request No. 15:** Admit that Defendant Urbana's actions, through its officials, was part of a continuing course of impermissible discriminatory and illegal conduct against Plaintiff Justin.

**ANSWER:**

**Request No. 16:** Admit that Defendant Urbana's actions, through its officials, were intended to interfere with Plaintiff Justin's business relationships, including those related to the Plaintiff Businesses.

**ANSWER:**

**Request No. 17:** Admit that Defendant Urbana, through its officials, entered onto the property at 405 Gwynne Street without permission from its owner.

**ANSWER:**

**Request No. 18:** Admit that Defendant Urbana, through its officials, made a clear and unambiguous promise to Plaintiff Justin regarding the opportunity to remedy alleged nuisances at 405 Gwynne Street prior to its demolition.

**ANSWER:**

**Request No. 19:** Admit that Defendant Urbana's actions, through its officials, caused severe emotional distress to Plaintiff Justin.

**ANSWER:**

**Request No. 20:** Admit that Defendant Urbana's conduct, through its officials, constitutes a corrupt activity under Ohio Revised Code § 2923.32.

**ANSWER:**

**Request No. 21:** Admit that Defendant Urbana, through its officials, breached a duty of ordinary care owed to Plaintiff Justin and Plaintiff Businesses.

**ANSWER:**

## INTERROGATORIES

**Interrogatory No. 1:** Identify the person answering these interrogatories. Include their full name, residential address, business address, current job title, occupation, name of immediate supervisor, length of employment with their current employer, and the length of time in their current position.

**ANSWER:**

**Interrogatory No. 2:** Identify all persons who have personal knowledge of the facts and circumstances or with whom you have discussed the underlying occurrences referenced in the Amended Complaint. For each such person, provide their full name, residential or business address, and business telephone number.

**ANSWER:**

**Interrogatory No. 3:** Identify and describe in detail any liability insurance policies, including excess or umbrella coverage, under which you may be covered applicable to this matter. Include the name of the insurance company, policy number, policy limits of liability, and the scope of coverage for any policy that may be used to satisfy, indemnify, or reimburse all or part of a judgment in this case.

**ANSWER:**

**Interrogatory No. 4:** Identify all lay witnesses Defendant Urbana intends to call to testify at trial, hearing, or deposition in support of your defense. For each witness, provide their full name, current or last known residential address, and current or last known telephone number with a brief summary of their anticipated testimony.

**ANSWER:**

**Interrogatory No. 5:** Briefly summarize the anticipated testimony of each and every individual identified within your answer to the preceding Interrogatory.

**ANSWER:**

**Interrogatory No. 6:** Identify each and every expert witness whom Defendant intends to call to testify in the defense to Plaintiff's Amended Complaint. Within For each expert, provide their full name, field of expertise, current professional address, and business telephone number.

**ANSWER:**

**Interrogatory No. 7:** For each expert witness identified in your response to Interrogatory No. 6, summarize the subject matter of their anticipated testimony and the substance of their expected opinions.

**ANSWER:**

**Interrogatory No. 8:** List all documents, exhibits, or other materials you intend to introduce at trial, hearings, or depositions in this matter.

**ANSWER:**

**Interrogatory No. 9:** State whether you or your attorneys possess any video recordings, photographs, audio recordings, or other visual or electronic media involving Plaintiff Justin or any other person that relate in any way to the allegations in the Amended Complaint or the underlying facts of this case.

**ANSWER:**

**Interrogatory No. 10:** Describe in detail the process and criteria used by Defendant Urbana for the removal of Political Signs during the 2019 mayoral election, including any specific actions taken through its officials against signs supporting Plaintiff Justin.

**ANSWER:**

**Interrogatory No. 11:** Detail the steps taken by Defendant Urbana to intervene in any funding request by Plaintiff Businesses, including any legal or policy justifications provided for said intervention.

**ANSWER:**

**Interrogatory No. 12:** Explain the reasons for Defendant Urbana's actions, through its officials, regarding zoning violations cited against Plaintiff Justin or the Plaintiff Businesses, including any legal or policy justifications for its actions.

**ANSWER:**

**Interrogatory No. 14:** Detail the process and criteria used by Defendant Urbana for the demolition of property located at 405 Gwynne Street, including any specific actions taken against property owned by Plaintiff Justin and/or Plaintiff Businesses.

**ANSWER:**

**Interrogatory No. 15:** Provide details of any rumors spread by Defendant Urbana, through its officials, regarding Plaintiff Justin or Plaintiff Businesses, including the content and purpose of such rumors.

**ANSWER:**

**Interrogatory No. 16:** Describe any interactions and / or communications Defendant Urbana, through its officials, had with any elected officials at the Federal, State, or Local level, or said officials' offices, employees, or representatives at any time concerning Plaintiff Justin or Plaintiff Businesses.

**ANSWER:**

**Interrogatory No. 17:** If the response to any of the preceding requests for admission is not an unqualified admission, provide a detailed statement of all facts and reasons that form the basis for the failure to provide an unqualified admission.

**ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### I. RULE 34 PROHIBITS DOCUMENT DUMPS

Upon providing the documents requested, Defendant has an obligation to specifically identify which Bates-labelled documents it is providing in response to which specific document requests. Rule 34(b)(2)(E) provides that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." *Id.* The "kept in the usual course of business" option is not satisfied by unloading a haphazard "document dump" on the Plaintiff and then responding to all document requests with rote boilerplate such as, "see attached documents" or "responsive documents are being produced" – leaving the statement Plaintiff with the burdensome task of ferreting through the document dump to ascertain which documents are responsive to which particular requests, and whether there are even any responsive documents at all to particular requests.

A document dump of this nature contravenes Rule 34(b)(2)(E). In *Johnson v. Kraft Foods North America, Inc.*, 236 F.R.D. 535 (D. Kan. 2006), the plaintiff produced a voluminous number of documents but did not specify which documents related to each specific document request. Instead, the plaintiff errantly thought she could satisfy Rule 34's requirements by declaring the documents were produced as "kept in the usual course of business." Finding this to be improper, the court ordered the plaintiff to identify, by bates numbers affixed to the documents, which documents were responsive to each specific document request:

> Defendants complain that Plaintiff responded to the First Request for Production by stating responsive documents "will be produced" or "have been produced."

Defendants further complain that Plaintiff has produced approximately 3,000 pages of documents, yet he has refused to specify which documents relate to specific document requests. Defendants argue that Plaintiff's written responses are insufficient and thus request that the Court order Plaintiff to identify (by the bates numbers affixed to each document) which documents Plaintiff contends are responsive to each specific document request.

Plaintiff counters that it was proper to respond to various requests by stating that "documents have been produced" because the documents that were produced were provided to Defendants "as they are kept in the usual course of business."

Federal Rule of Civil Procedure 34 governs requests for production of documents. Subsection (b) provides that a party who produces documents for inspection "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." This provision was added to Rule 34(b) to prevent parties from "deliberately … mix[ing] critical documents with others in the hope of obscuring significance." Thus, the Court must decide, based on the information now provided by the parties, whether the documents provided by Plaintiff were produced as they were kept in the usual course of business.

Upon review of the pleadings and exhibits submitted by the parties in conjunction with this motion, the Court finds no information about the manner in which the referenced documents were produced; i.e., where these documents were maintained or who maintained them and whether the documents came from one single source or file or from multiple sources or files. In short, Plaintiff fails to provide the Court with any information, let alone evidentiary proof, to establish that the documents were produced as kept in the ordinary course of business.

Rule 34 does not explain what it means to produce documents "as they are kept in the usual course of business." The Court, however, finds the facts here very like the facts in *Cardenas v. Dorel Juvenile Group, Inc.* In *Cardenas*, this Court held that a party who chooses the Rule 34(b) option to produce documents as they are kept in the ordinary course of business bears the burden of showing that the documents were in fact produced in that manner and that a mere assertion that they were so produced is not sufficient to carry that burden.

Considering the foregoing, the Court finds that Plaintiff has not met his burden to establish that he produced these documents "as they are kept in the usual course of business." Because Plaintiff did not do so, he should have organized and labeled them to correspond with the categories in each request, as required by Rule 34(b). As the documents already have been provided, the easiest way for Plaintiff to comply with the "organize and label" requirement is for Plaintiff to identify by bates number which documents are responsive to each request. To that end, Plaintiff will be ordered to serve amended discovery responses to those requests that he responded to by referring to "previously produced" documents and will be further

> ordered to identify by bates stamp number which documents are responsive to which requests.
>
> *Johnson*, 236 F.R.D. at 540-541.

This principle was embraced in *Grant v. Target Corp.*, 281 F.R.D. 299, 312-313 (S.D. Ohio 2012). There, the plaintiff "produced a number of documents to [the defendant]," but "never indicated which requests these documents were responsive to, making it difficult for [defendant] and this Court to know to which requests for production of documents [plaintiff] responded and to which he did not." *Id.*, 281 F.R.D. at 312. Finding this contravened Rule 34's requirements, the court ordered the plaintiff "to organize and label his documents so that each document corresponds to the categories in the requests." *Id.*, 281 F.R.D. at 313.

In *Graff v. Haverhill North Coke Co.*, 2013 WL 13078603 (S.D. Ohio Aug. 8, 2011), the court aptly explained what is meant by producing documents "as they are kept in the usual course of business":

> Rule 34 requires the party who produces documents for inspection to produce them "as they are kept in the usual course of business or … organize and label them to correspond to the categories in the request." Fed.R.Civ.P. 34(b)(2)(E)(i). The Rule does not explain what it means to produce documents in the "usual course of business." As explained by one court, a party may choose to produce documents as they are kept in the ordinary course of business in several ways:
>
>> The most obvious means of complying with the requirement of Rule 34(b) to produce documents as they are kept in the usual course of business is to permit the requesting party to inspect the documents where they are maintained, and in the manner in which they are organized by the producing party. It logically follows that when production occurs by means other than permitting the demanding party access to the original records as they are organized and maintained by the responding party, such as by instead choosing to copy the documents and produce the duplicates, they must be organized in such a way that the system utilized by the producing party is replicated; in other words, the documents should be produced, organized and labeled and, if appropriate, indexed just as they are maintained by the producing party.
>
> *Pass & Seymour, Inc. v. Hubbell Inc., 255 F.R.D. 331, 336 (N.D.N.Y. 2008)* (internal footnote omitted) (citing *Johnson v. Kraft Foods North America, Inc., 236 F.R.D. 535, 540-541 (D. Kan. 2006)*. The "usual course of business" provision of Rule 34 was intended to prevent the "dumping of massive quantities of documents, with no indexing or readily apparent organization, in response to a document request from an adversary"' and "to prevent parties from 'deliberately…mix[ing] critical documents with others in the hope of obscuring significance.'" *Pass v. Seymour*, 255 F.R.D. at 334 (internal citations omitted). Underlying the "usual course of business" method of production is the assumption "that production of records as kept in the usual course of business ordinarily will make their

> significance pellucid." *CooperVision Inc. v. Ciba Vision Corp.*, No. 2:06CV149, 2007 WL 2264848, at *4 (E.D. Tex. Aug. 6, 2007).
>
> The party claiming that documents were produced in the ordinary course of business bears the burden of showing that the documents were so kept. *See Synventive Molding Solutions, Inc. v. Husky Injection Molding Systems, Inc.*, 262 F.R.D. 365, 370 (D. Vt. 2009); *Consolidated Rail Corp. v. Grand Trunk Western R.R. Co., No. 1:09-cv-10179, 2009 WL 5151745, at *3 (E.D. Mich. Dec. 18, 2009)* (citation omitted); *see also S.E.C. v. Collins & Aikman Corp., 256 F.R.D. 403, 409 (S.D.N.Y. 2009)*; *Cardenas v. Dorel Juvenile Group, Inc., 230 F.R.D. 611, 618 (D.Kan. 2005)*. "To carry this burden, a party must do more than merely represent to the court and the requesting party that the documents have been produced as they are maintained." *Pass & Seymour, 255 F.R.D. at 334*. The party producing the documents must provide information about how documents are organized in the party's ordinary course of business by revealing "where the documents were maintained, who maintained them, and whether the documents came from one single source or file or from multiple sources or files." *Consolidated Rail Corp., No. 1:09-cv-10179, 2009 WL 5151745, at *3* (citation omitted); *see also Pass & Seymour, 255 F.R.D. at 334; Cardenas, 230 F.R.D. at 618*.

*Graff*, 2013 WL 13078603, at *8.

In *Koninklijke v. KXD Technology, Inc.*, 2007 WL 879683 (D. Nev. March 20, 2007), the court aptly summarized this principle:

> Fed.R.Civ.P. 34(b) provides that a party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request. As this Court stated in *Residential Constructors, LLC v. Ace Property and Casualty Insurance Co.,* 2006 WL 1582122 (D.Nev.) *2, the provision that a party may produce records in the manner they are kept in the usual course of business was intended primarily for the protection of the discovering party to prevent deliberate "shifting of the materials from the sequence in which they were originally kept to somewhere else." *In re Adelphia Communications Corp.,* 338 B.R. 546, 553 (S.D.N.Y.2005), citing 8A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 2213.
>
> Thus, a party producing voluminous documents in response to a request for production should reasonably organize, label or index the produced documents to correspond with the categories in the request. *Residential Constructors, LLC, supra.* This requirement ensures that documents responsive to a particular request are identified in response to that request and can be reasonably accessed in the document production. A party who produces voluminous documents in no apparent order does not comply with Rule 34. *Wagner v. Dryvit Systems, Inc.,* 208 F.R.D. 606, 610–11 (D.Neb.2001); *Stiller v. Arnold,* 167 F.r.d. 68, 70–71 (N.D.Ind.1996). If the party produces its records in the manner they are kept in the usual course of its business, then it should identify the documents with an appropriate index or references to the document numbers corresponding to the specific requests. A party

> who fails to maintain its business records in an organized state, cannot rely on its own lack of organization to dump records on the discovering party and simply advise it to go search for what it is seeking. *Residential Constructors, LLC, supra.* This applies to documents that are produced electronically or in paper format.

*Id.*, at *3.

Further, responding to a document production request by stating "see attached documents" or the like, when in fact no such responsive documents are included within the plaintiff's document dump, is an evasive false representation. *German v. Micro Electronics, Inc.*, 2013 WL 143377, *5 (S.D. Ohio Jan. 11, 2013). If the defendant has no documents that are responsive to a given request for production, then the defendant should truthfully respond to the request by stating no such documents exist, so that the plaintiff is not burdened with the task of searching through the defendant's document dump to determine whether there are, in fact, any documents that are responsive to the request. *Id.*

In light of the applicable case law construing Rule 34, please be advised that a haphazard "document dump" accompanied by responses such as "see attached documents" or "responsive documents are being produced," coupled with a boilerplate statement that the documents are being produced "as they are kept in the usual course of business," is unacceptable and will be met with efforts to procure Defendant's compliance with Rule 34 by all available legal means, including seeking Court intervention if necessary.

The purpose of providing you with this analysis is to avoid any issues of this nature, and, at the same time, this analysis puts Defendant on notice of their legal obligation to appropriately respond to this document request and her failure to do so will be considered intentional. If that happens, Plaintiff will seek to compel proper disclosure of documents representing to the Court that Defendant has intentionally ignored their legal obligation. Defendant and its counsel are thus instructed to ensure that Defendant's responses to Plaintiff's requests for production of documents, and Defendant's document production itself, are in full compliance with Rule 34(b)(2)(E) to the letter, as construed by the courts.

## II. DEFENDANT URBANA IS REQUIRED TO PRODUCE REQUESTED DOCUMENTS EVEN THOUGH PLAINTIFF MAY ALSO HAVE SOME OF THE DOCUMENTS REQUESTED

The fact that a requesting party may have the documents being requested does not justify the adverse party in refusing to produce them, and an objection to requests for production on this ground is meritless. In *Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229 (W.D.N.Y. 1998), a party objected to a document production request by asserting the information was already in the requesting party's possession. Granting the requesting party's motion to compel production, and overruling the responding party's objection, the court held:

> Defendants also contend in their Opposition to Plaintiff's Cross–Motion to Compel that Defendants need not respond to Plaintiff's Requests, as the documents sought in Requests Nos. 5, 6, and 7 are already in the possession of Plaintiff. Defendants'

> Opposition at 7. Defendants are incorrect. Unless excused by a court order, a requested party must provide relevant discovery regardless of whether it is already available to the requesting party. *Federal Deposit Insurance Corp. v. Renda,* 126 F.R.D. 70, 72 (D.Kan.1989) (defendant's refusal to produce documents improper, as plaintiffs are entitled to review those documents which are in defendant's control regardless of whether plaintiffs are in possession of certain documents which they requested from defendants); *Westhemeco v. New Hampshire Insurance Co.,* 82 F.R.D. 702, 710 (S.D.N.Y.1979) (plaintiff's possession of requested documents does not preclude plaintiff's request that defendant identify them, absent a showing of bad faith or harassment).

*Id.*, 181 F.R.D. at 240.

The view espoused in *Land Ocean Logistics* has been universally embraced by federal courts. *Williams v. Sweet Home Healthcare, LLC*, 2017 WL 2779189, *2 (June 27, 2017) (granting defendant's motion to compel, and overruling the plaintiff's objection based on the fact the defendant also had the documents, because a party's possession of the documents is not a bar to the discovery of them from the adverse party); *Milliner v. Mutual Securities, Inc.*, 2017 WL 6419275, *2 (N.D. Cal. March 24, 2017 (granting the defendant's motion to compel, and overruling the plaintiff's objection asserting the document production requests failed to meet the proportionality requirement of Rule 26(b)(2) because the vast majority of the documents sought by defendant were in its possession, since a party is required to produce documents even though the requesting party is also in possession of them); *Gomez v. Tyson Foods, Inc.*, 2012 WL 3111897, *4 (D. Neb. July 31, 2012) (granting the defendant's motion to compel production of documents, and overruling plaintiff's objection based on the fact the documents were also in defendant's possession, because "an objection based on information that the moving party is already in possession of documents it seeks to obtain by inspection, is an insufficient response to requests for production; a party is required to produce documents in its possession, custody or control, regardless of whether it believes the requesting party already has those documents"); *Brill v. Napolitano*, 2010 WL 11512400, *5 (C.D. Cal. May 12, 2010) (granting the defendant's motion to compel production of documents, and overruling the plaintiff's objection based on the fact they were also in defendant's possession, because a party "is required to produce documents [she] has in [her] possession, custody or control, regardless of whether [she] believes [defendant] already has those documents"); *Benedict College v. National Credit Systems, Inc.*, 2009 WL 3839473, *6 (D.S.C. Nov. 16, 2009) ("Further, the fact that the information sought might already be in the possession of the requesting party or obtainable from another source is not a bar to discovery of the relevant information"); *Del Campo v. American Corrective Counseling Services*, 2008 WL 3154754, *2 (N.D. Cal. Aug. 1, 2008) ("Nevertheless, it is not a bar to the discovery of relevant material that the same material may be in the possession of the requesting party or obtainable form another source"); *Ramsay v. G.C. Evans Sales and Mfg. Co.*, 196 B.R. 114, 115 (Bkrtcy. E.D. Ark. 1996) ("Of course, the fact that defendant may already possess the documents is not a proper response," and thus "[t]he defendant is entitled to any properly discoverable documents in the possession or control of the trustee whether or not the defendant already has the documents"); *Fort Washington Resources, Inc. v. Tannen*, 153 F.R.D. 78, 79 (E.D. Pa. 1994) ("Further, it is not a bar to the discovery of relevant material that the same material may be in the possession of the requesting party or obtainable form another source," and "[t]hus, the Defendant must produce the

requested documents regardless of their existence in the possession of Plaintiff or their accessibility through the subcontractors”).

Defendant is expected to produce the documents requested herein, notwithstanding that Plaintiff may be in possession of some of them as well. Defendant’s failure to do so will be met with efforts to procure its compliance with these discovery requests by all available legal means, including seeking Court intervention if necessary.

## III. INSTRUCTIONS

1. Prior to answering these discovery requests, Defendant Urbana is requested to search all records, documents, papers, and electronic information storage systems and to review all information in its possession or control or within the possession or control of its attorneys.

2. In responding to the requests for production of documents set forth below, please keep in mind that, as used in these requests, “you” and “your” shall be construed to mean Defendant and/or its attorneys, agents, and/or representatives, and any agents, employees and/or representatives of its attorneys. Unless otherwise noted, the applicable timeframe for which a response is requested is 2019 to present.

3. Further, as explained above, please be advised that a haphazard “document dump” accompanied by responses such as “see attached documents” or “responsive documents are being produced,” coupled with a boilerplate statement that the documents are being produced “as they are kept in the usual course of business,” is unacceptable and will be met with efforts to procure Defendant’s compliance with Rule 34 by all available legal means, including seeking Court intervention if necessary. Defendant and its counsel are thus instructed to ensure that Defendant’s responses to Plaintiff’s requests for production of documents, and Defendant’s document production itself, are in full compliance with Rule 34(b)(2)(E) to the letter, as construed by the courts.

4. All documents produced pursuant to this request are to be produced in the form, order and manner in which they are maintained in your files and are to be organized, identified or produced in such a manner as to indicate which of the following numbered requests they are produced in response to. Documents are to be produced in file folders and file cartons in which they have been maintained or stored and are to be clipped, stapled or otherwise arranged in the same form and manner as they were maintained in your files (whether personal, business, or other files). If identification numbers are assigned to the documents produced pursuant to this request, you are also to produce the key to the numbering system employed.

5. If as to any document requested to be produced, the following information is not apparent upon the face of such document, provide the following information concerning such document in such a manner that it is reasonably convenient to relate such information to such document (as by use of a key, by writing the information on the document or by attaching a separate sheet containing such information to the document): i) the name, address and position of its author, preparer or compiler; ii) the date such document was authored, prepared or compiled; iii) the title of such document, if any; iv) the name, address and position of the addressee of such document, if any; v) the name, address and position of the present custodian of the

document; vi) the present location of such document, including the street address, city, state and zip code.

6. If any requested document is not produced by virtue of its loss, misplacement, discarding, destruction, or the fact that it has passed out of your possession, custody, or control, produce any and all documents relating to a policy or practice pursuant to which the said non-produced document was discarded, destroyed or passed out of your possession, custody, or control, and identify: i) the last known custodian of such document by name, address and position; ii) the approximate date upon which it was lost, misplaced, discarded, destroyed or passed out of your possession, custody or control; iii) the nature of the document including a summary of its contents; iv) the name, employer, and last known address of all persons having knowledge of the contents thereof or knowledge of the circumstances under which the document was lost, misplaced, discarded, destroyed or passed out of your possession, custody, or control.

7. If any such request for documents is deemed by you to call for the production of information which is privileged or otherwise protected from disclosure, and such claim is asserted, a list is to be furnished at the time of production identifying each document so withheld together with the following information: i) the reason for withholding; ii) a statement of facts constituting the basis for any claim for privilege or other ground of non-disclosure; iii) a brief description of the document including:

a. the date of the document:
b. the name, address and position of its author or authors;
c. the name, address and position of each person to whom the document was sent or who has seen or has had access to, or custody of the document;
d. the numbered paragraph of this request to which the document relates;
e. the general subject matter of the document; and
f. in the case of any document relating in any way to a meeting or conversation, identification of such meeting or conversation and persons attending or participating in such meeting or conversation

8. This is a continuing request for production of documents. It is hereby requested that any newly discovered, corrected or additional information responsive to this Document Request be supplied within a reasonable time not to exceed sixty (60) days after discovery of such information, and in all events not later than thirty (30) days prior to the date of trial.

**Request for Production No. 1:** If the response to any Request for Admission was anything other than an unqualified admission, produce all Documents and Communications that support, relate to, or form the basis for such response.

**ANSWER:**

**Request for Production No. 2:** Produce copies of all Documents, physical items, tangible things, electronically stored information (ESI), or other materials you intend to introduce or rely upon at any hearing, deposition, affidavit, or trial in this matter.

**ANSWER:**

**Request for Production No. 3:** Produce all Documents and Communications preserved, collected, or maintained in anticipation of, or in connection with this litigation concerning the claims asserted in this action.

**ANSWER:**

**Request for Production No. 4:** Produce all insurance policies, indemnification agreements, including liability, umbrella, excess, indemnity policies or other documents reflecting insurance coverage that may apply to any judgment or claims in this litigation, including general liability, errors and omissions, or public official liability policies.

**ANSWER:**

**Request for Production No. 5:** Produce all non-privileged Documents and Communications relating to the facts, events, or allegations in the Amended Complaint.

**ANSWER:**

**Request for Production No. 6:** Produce all Documents and Communications related to Defendant Urbana's involvement, through its officials, in the 2019 mayoral election, including any actions taken against Plaintiff Justin.

**ANSWER:**

**Request for Production No. 7:** Produce all Documents and Communications supporting your complaint filed with the Champaign County Election Board against Plaintiff Justin during the 2019 mayoral election.

**ANSWER:**

**Request for Production No. 8:** Produce all Documents and Communications supporting your complaint filed with the Ohio State Election Board against Plaintiff Justin during the 2019 mayoral election.

**ANSWER:**

**Request for Production No. 9:** Produce all Documents and Communications between you and other Defendants named in the Amended Complaint regarding the removal of Political Signs supporting Plaintiff Justin during the 2019 mayoral election.

**ANSWER:**

**Request for Production No. 10:** Produce all Documents and Communications related to the funding request(s) of Plaintiff Businesses, including any conditions imposed on receiving the funding, and any communications with the other Defendants named in the Amended Complaint related to the funding request(s) of Plaintiff Businesses.

**ANSWER:**

**Request for Production No. 11:** Produce all Documents and Communications related to Plaintiff Businesses, including any communications with the other Defendants named in the Amended Complaint.

**ANSWER:**

**Request for Production No. 12:** Produce all Documents and Communications of meetings with Plaintiff Justin.

**ANSWER:**

**Request for Production No. 13:** Produce all Documents and Communications by you, through any officials, related to zoning decisions affecting properties owned by Plaintiff Justin or Plaintiff Businesses, including but not limited to, 207 W. Market Street and 405 Gwynne Street.

**ANSWER:**

**Request for Production No. 14:** Produce all Documents related to any legal or administrative actions taken by you, through any officials, against Plaintiff Justin or Plaintiff Businesses, including notices of violations or fines.

**ANSWER:**

**Request for Production No. 15:** Produce all Documents and Communications, including social media posts, email messages, text messages, public statements, or press releases authored by Defendant Urbana, through its officials, or attributed to Defendant Urbana, through its officials, concerning Plaintiff Justin or Plaintiff Businesses.

**ANSWER:**

**Request for Production No. 16:** Produce all Documents and Communications reflecting any policies, procedures, or guidelines related to political activities, zoning decisions, and funding allocations as they pertain to interactions with Plaintiff Justin and/or Plaintiff Businesses.

**ANSWER:**

**Request for Production No. 17:** Produce all Communications between city officials and any other parties regarding Plaintiff Justin, his political activities, or Plaintiff Businesses.

**ANSWER:**

Respectfully submitted,

**/s/ Bradley N. Jeckering**
Bradley N. Jeckering (0092299)
Kristie A. Campbell (0075855)
Jeckering & Associates, LLC
10 North High Street, Suite 301
Columbus, Ohio 43215
P: (614) 944-5151
F: 614-515-4905
brad@centralohiolegal.com
kristie@centralohiolegal.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served upon all parties involved in this action either by U.S. Mail, prepaid, or electronically, through email on July 18, 2025.

**/s/ Bradley N. Jeckering**
Bradley Jeckering (0092299)
*Counsel for Plaintiff*

**VERIFICATION PAGE**

I, Defendant City of Urbana, hereby verify that the answers provided are true to the best of my knowledge and belief.

____________________ Date

________________________________ Defendant City of Urbana by

__________________________________

State of Ohio }
}. SS:
County of ________________ }

Sworn to in my presence by ________________________ on behalf of Defendant City of Urbana, on this _____ day of __________________, 20___.

________________________________ Notary Public